UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 22-CR-10352-PBS |
| | ) | |
| WILLIAM SEQUEIRA | ) | |

**<u>SENTENCING MEMORANDUM ON BEHALF OF WILLIAM SEQUEIRA</u>**

I.      **<u>Introduction</u>**

Mr. Sequeira comes before the Court following his plea pursuant to a Rule 11(c)(1)(C) agreement which include a 54-month term of incarceration and 36 months of supervised release. Mr. Sequeira is remorseful and deeply ashamed of his conduct. His shame stems not just from commission of theses offenses, but in large measure because his life had so publicly become a success story after decades of incarceration. He is accepting of his return to prison but remains hopeful that he can again return to a path of continued success.

Loss of his father as an adolescent led to adjustment difficulties which preceded a series of criminal convictions that had Mr. Sequeira more frequently than not incarcerated during his 42 years of adulthood. After serving some 20-years of an originally imposed 322-month sentence, Mr. Sequeira returned to the Boston/Providence area in January 2018. A sustained period of success followed. He completed a period of supervised release working for a produce delivery company in Providence. In 2020, he achieved notoriety for turning away from his past after an appearance in traffic court in Providence which occurred as part of Chief Municipal

Judge Frank Caprio's popular "Caught in Providence" YouTube channel.[1] In the wake of the global pandemic limiting hours and his physical health issues otherwise limiting his ability to work, Mr. Sequeira struggled acutely with his finances. Over the course of nine days in September and October 2022, Mr. Sequeira committed these offenses. Following his arrest during his attempt to rob the Citizens Bank on Boyleston Street, Mr. Sequeira spoke with detectives and readily admitted to committing the other bank robberies as well. All-told, he received less than $2,000 from these unarmed robberies – including $88.00 in one instance – and now faces the shame of failing so publicly and a lengthy period of incarceration at an advanced age with health problems. For the reasons, articulated more fully below, the Court should accept the proposed sentence as sufficient but not greater than necessary in these circumstances. Mr. Sequeira additionally requests that this Court recommend strongly to the Bureau of Prisons that he be designated to serve this sentence at FMC-Devens due to his ongoing health needs.

II.     **Instant Offense**

As detailed more fully in the presentence report, Mr. Sequeira committed these robberies in largely the same manner – walking into each bank branch unarmed, orally demanding money via threats, and walking out. PSR ¶¶10-13. Having identified Mr. Sequeira as a suspect, bank robbery task force officers were present in the bank branch when Mr. Sequeira made a similar robbery demand and arrested him. PSR ¶¶14-15. Mr. Sequeira spoke with three investigators after his arrest in a recorded interview. PSR ¶16. He readily admitted to the attempted bank robbery, and when questioned about any other robberies he may have committed, he admitted to

---

[1] Judge Caprio's YouTube channel has some 2.44 million subscribers. Mr. Sequeira's appearance before Judge Caprio occurred in 2020 after Mr. Sequeira had received traffic tickets in Providence. The first episode involving Mr. Sequeira has been viewed some 6 million times, and Mr. Sequeira has been the subject of follow-up episodes.

committing other robberies before being confronted with any evidence. USAO_0037 at 15:38. Detectives showed him surveillance stills from the robberies in these cases and Mr. Sequeira identified himself and admitted to financial pressures and an inability to work as his reason for committing these robberies. *Id*.

Mr. Sequeira has remained in custody since his arrest on October 5, 2022, having initially been charged in state court in Suffolk and Bristol County district courts. His plea in June of this year followed some six months from the Indictment in December 2022. As of the sentencing date on September 15, 2023, Mr. Sequeira will have served 345 days in custody.

### III.     Mr. Sequeira's History and Characteristics

Mr. Sequeira grew up the youngest in a working-class family of four in New Bedford, Massachusetts. His father owned a garage-door installation business which allowed him to spend significant time with his son. Tragically, Mr. Sequeira's father perished following a severe car accident when Mr. Sequeira was just 8 years old. His adjustment struggles in its aftermath led to juvenile offending and a series of adult convictions that kept him in prison more than out, totaling some 37 out of the 42 years of his adult life.

While struggling with his father's passing, Mr. Sequeira started using marijuana and whiskey daily during his adolescence, using cocaine by age 16. Since his release from prison in 2018, substance abuse has not generally been a struggle for Mr. Sequeira. (As noted in the PSR, his supervision included two dirty urinalysis results. This led to completion of counseling with probation's assistance. PSR ¶50.)

Mr. Sequeira's release in 2018 came as a shock to him. In September 1998, he had received a 322-month sentence in the District of Rhode Island. PSR ¶50. That judgment would be affirmed one year later and Mr. Sequeira (then in his 30's) stared at the prospect of likely

being in his 60's when released. Unexpectedly in 2016, he received a letter from the Federal Defender Office informing him that as a result of the Supreme Court's holding in *Johnson v. United States*, and subsequent decisions, he may be entitled to re-sentencing. Between the summer of 2016 until late November of 2017, he remained in limbo at USP Atlanta as litigation ensued on his behalf before the District Court and First Circuit about the applicability of the various decisions to his case. Ultimately, the Court resentenced Mr. Sequeira to time served. Upon his release in January 2018, Mr. Sequeira had served some 240 months in custody since his arrest in December 1997.[2] He emerged years before he expected to a stark and different world than he had left.

Through the assistance of US Probation, following his release from custody, Mr. Sequeira gained employment with a produce delivery company in Fall River, Nasiff Produce. Nasiff Produce has operated as a family-owned produce delivery company since 1929. Mr. Sequeira drove a delivery truck and loaded/unloaded produce at the warehouse. Mr. Sequeira obtained an apartment in a rooming house on Mawney Street in Providence.

In one follow-up episode from "Caught in Providence", Mr. Sequeira sat for an extended interview about his life, and a camera crew filmed Mr. Sequeira while working. In segments showing Mr. Sequeira working, a genuine sense of pride can be seen as Mr. Sequeira embraced an opportunity he never thought he would have.

---

[2] In advance of the re-sentencing, US Probation provided the District Court with a re-calculated guideline range of 121-151 months.

Ben Affleck Played Me: A Follow Up

▶ YouTube · Caught In Providence · Jan 25, 2021



*Mr. Sequeira working on the loading dock of Nasiff Produce.*

Ben Affleck Played Me: A Follow Up

▶ YouTube · Caught In Providence · Jan 25, 2021



*Mr. Sequeira driving a Nasiff Produce truck.*

These excerpted screenshots are overdubbed by Mr. Sequeira's telling the audience:

> The first day I walked out of prison, I got released, and I went to the Providence
> bus terminal. I was in so much shock, I was like – looking at people, I was like –
> it's hard to imagine I'm free. And I'm still adjusting after three years. Well, it's
> not easy. It's very hard out here. It's a learning, learning, learning – so you never
> stop learning. You just, you gotta change your ways, and you gotta do the right
> things. You gotta stay positive. You gotta think positive. That's what I do: I try to

stay positive, think positive. So I can have a good life, the remainder of what I
have left.

"Ben Affleck Played Me: A Follow Up", at 5:17 – 5:34, available at:

https://www.youtube.com/watch?v=kbYO19ByM-4).

The president of the company, Mr. Steven Nasiff, spoke with police during the early
investigation of this case, with police pursuing leads.[3] He confirmed that he had given Mr.
Sequeira a job upon release from prison and he worked off and on for the company and that he
helped Mr. Sequeira out where he could and gave him work. Mr. Nasiff had in fact taken Mr.
Sequeira to eat the day prior to the first robbery in this case at a local Applebee's. According to
the police report, upon seeing surveillance stills of Mr. Sequeira from the initial robberies, Mr.
Nasiff commented that he couldn't believe Mr. Sequeira would "put himself in this predicament
again."

Mr. Sequeira's financial struggles at the time of these robberies were part of the subject
of his interview with detectives. The COVID pandemic limited Mr. Sequeira's hours and
income. PSR ¶89. As attested to by the presentence report, he resorted to shoplifting from
grocery stores during times of acute struggle (for which he received sentences of probation in
one instance, a fine in another, and a guilty file in the third). PSR ¶51-53.

In addition to pandemic-related hardship, Mr. Sequeira's working ability suffered when
his physical health began to wane after sustaining a knee injury and back pain. PSR ¶89. Mr.
Sequeira had previously been referred for a total knee replacement. PSR ¶84. He currently walks

---

[3] Ironically, it was a Fall River patrol officer who, following the bank robbery reports, recalled
an encounter with Mr. Sequeira while he worked a traffic detail. He remembered Mr. Sequeira
recounted his criminal history robbing banks in Boston and telling the officer that Ben Affleck's
character in "The Town" was based on his life. After seeing the still photographs from the
robberies, the officer googled Mr. Sequeira's name and viewed the episode of "Caught in
Providence" involving Mr. Sequeira.

with a pronounced limp (which assisted in his identification by law enforcement), has a knee brace and was designated for a lower bunk at Wyatt. *Id*. Additionally, laboratory reports from January 18, 2023, contained within the medical records at Wyatt confirm that Mr. Sequeira is at increased risk for diabetes in the future.

IV.     **Advisory Guideline Range**

The PSR calculates the advisory guideline range offense level consistently with the parties' agreement in this case. That is, a Total Offense Level of 25. The PSR correctly scores Mr. Sequeira in Criminal History Category III as a result of his 1999 Federal conviction and the three shoplifting convictions since his release. PSR ¶55. This would yield an applicable range under the guidelines is 70-87 months. PSR ¶94.

However, a departure pursuant to U.S.S.G §4A1.3(b) is warranted because his score of 5 criminal history points overstates the seriousness of his scoreable criminal history. This section of the guidelines calls for a downward departure where "reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes." But for the shoplifting offenses in which collectively the most punitive sentence he received was a $100 fine, Mr. Sequeira's only scoreable conviction is his 1999 conviction. In *United States v. Lindia*, the court held that a sentencing court may depart downward if it determines that the category inaccurately reflects a defendant's actual criminal history. 82 F.3d 1154, 1165 (1st Cir. 1996) (abrogation recognized on other grounds by *United States v. Eirby*, 262 F.3d 31 (1st Cir. 2001)). Furthermore, the First Circuit in *United States v. Rivera*, 994 F.2d 942, 948 (1st Cir. 1993), noted that some guidelines set forth "encouraged" grounds for departures. Section 4A1.3 is one such guideline, and obviously under a non-mandatory guideline scheme such a factor is

even more warranted. Here, Mr. Sequeira's placement in Criminal History category III rather than category II is driven exclusively by his shoplifting cases.

Accordingly, under the circumstances, Mr. Sequeira submits that Criminal History category III inaccurately characterizes his criminal history for this sentencing. Because Criminal History Category III subjects him to an unfairly harsh assessment under the guidelines, counsel submits that the Court should depart downward and treat Mr. Sequeira as a criminal History Category II offender for the purposes of this sentencing. That is, the Court should depart downward to Criminal History II and a guideline range of 63-78 months before considering the sentencing factors enumerated in 18 U.S.C. §3553(a).

### V.      3553(a) Factors and Request for Designation to FMC-Devens

The Court must impose a sentence which reflects the nature and circumstances of Mr. Sequeira's offense and his history and characteristics, and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2). *United States v. Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008). The parties' proposed sentence in this case is a significant one for Mr. Sequeira. He faces incarceration again until his mid-sixties, and thereafter a period of supervision which will assist him in regaining the stability he achieved following his release in 2018.

A 54-month sentence of incarceration adequately accounts for the seriousness of the offense, promotes a respect for the law, protects the public, and serves as an adequate deterrent to both Mr. Sequeira personally and others more generally. Imposition of the parties' jointly

requested sentence would not result in an unwarranted sentence disparity and is consistent with the sorts of sentences imposed on other like individuals with like records.[4]

Mr. Sequeira responded to adversity and financial struggle by committing new offenses, which merits this serious sentence. More than most, Mr. Sequeira now faces the indignity associated with the publicity surrounding a conviction and sentence in his tarnishing a feel-good story that garnered so much interest. Where he was lauded for exhibiting serious progress after a near-lifetime of incarceration, he now is viral headline fodder as the infamous bank robber back in court once more. Indeed, nearly every report of this case references and often links to video of his appearance before Judge Caprio.[5] Despite these simple drive-by headlines, Mr. Sequeira did

---

[4] As this District currently participates in the pilot program regarding the Judiciary Sentencing Information (JSIN), the presentence report contains data regarding non-5K1.1 sentences for individuals with the same primary guideline (2B3.1), offense level (25), and criminal history category (III) as the report finds for Mr. Sequeira. Counsel does not concede that this JSIN data is a reliable measure for the Court in determining whether a specific sentence yields an unwarranted disparity. To the extent that the Court does depart downward, and finds the JSIN data worthy of consideration, the JSIN Dashboard produces data that 34% of the sentences involve a downward departure or variance, and both an average and median sentence of 63 months.

[5] *See generally*, "Man gets caught robbing banks – again", Boston Globe (available at: https://www.bostonglobe.com/2022/10/06/metro/man-gets-caught-robbing-banks-again/); "Infamous bank robber William Sequeira arrested in attempted Back Bay heist", WBZ news (available at: https://www.cbsnews.com/boston/news/infamous-bank-robber-william-sequeira-arrested-boston-the-town-movie/); "Fall River bank robber caught after previously appearing on 'Caught in Providence'", ABC 6 Rhode Island (available at: https://www.abc6.com/fall-river-bank-robber-caught-after-previously-appearing-on-caught-in-providence/); "Convicted bank robber arrested in Boston after several recent holdups", WCVB News (available at: https://www.wcvb.com/article/william-sequeira-bank-robbery-arrest-oct-6-2022/41544921#); "Caught in the act: Accused bank robber who says Ben Affleck played him busted during heist spree", Boston 25 News (available at: https://www.boston25news.com/news/local/caught-act-accused-bank-robber-who-says-ben-affleck-played-him-busted-during-heist-spree/U2BPCD3GGBBBBKNBU3UMVTCTEY); "Bank robber who claimed Ben Affleck played him in 'The Town' faces more charges", Masslive.com (available at: https://www.masslive.com/news/2022/10/bank-robber-who-claimed-ben-affleck-played-him-in-the-town-faces-more-charges.html); "Prolific bank robber pleads guilty to robbing 4 Massachusetts banks in 5 days", Boston Herald (available at:

have some sustained period of success after his release in 2018, suggesting he can return to a positive path again. Both mentally and from a systemic perspective – Mr. Sequeira will return back home following this incarceration more prepared to be successful, adjusted to the realities of a world that moved on, and most certainly without the backdrop of a generational pandemic.

Specifically, as part of the sentence here, Mr. Sequeira requests a strong judicial recommendation that he be designated to FMC-Devens given his ongoing medical needs described above.

**VI.     Conclusion**

The parties' jointly recommended sentence in this case is a serious response to the crimes committed by Mr. Sequeira. It provides for just punishment and recognizes Mr. Sequeira's history, characteristics, the seriousness of these offenses, and his remorse for his failure to keep himself staying positive and thereby sliding backwards. It is Mr. Sequeira's hope that a judicial recommendation to BOP that Mr. Sequeira be designated to serve his sentence at FMC-Devens will be implemented by BOP so that he can address his medical struggles and prepare for a period of sustained success in the community upon his release. For all these reasons, Mr. Sequeira requests that the Court adopt the parties' recommendation and sentence him accordingly.

WILLIAM SEQUEIRA
By his attorney,

*/s/ Brendan Kelley*
Brendan Kelley
Federal Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
Tel: 617-223-8061

---

https://www.bostonherald.com/2023/06/26/prolific-bank-robber-pleads-guilty-to-robbing-4-massachusetts-banks-in-5-days/);

## <u>CERTIFICATE OF SERVICE</u>

I, Brendan Kelley, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 10, 2023.