UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 22-10352-PBS |
| | ) | |
| | ) | |
| WILLIAM SEQUEIRA, | ) | |
| Defendant | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this Sentencing Memorandum in the above-captioned case, currently scheduled for sentencing on September 15, 2023. For the reasons outlined in this memorandum, the Government believes that a sentence of 54 months' imprisonment is the appropriate sentence in this matter. Following the completion of this sentence, the Government requests that the defendant be on supervised release for a period of 36 months, to pay restitution to the various banks in the amount of $1,910.00 and be required to pay a mandatory special assessment of $100.

### I.   PROCEDURAL HISTORY

On October 5, 2022, the defendant, William Sequeira ("Sequeira") was arrested while in the course of robbing a bank in Boston. He was subsequently indicted on five counts; charging him with the attempted bank robbery in Boston as well as four other bank robberies he had successfully executed over the prior two weeks leading up to the robbery in Boston on October 5th, 2023. On Thursday, June 22, 2023, Sequeira plead guilty, pursuant to a binding plea agreement, to that five-count Indictment charging him with bank robbery, in violation of 18 U.S.C. § 2113(a). Sequeira was ordered detained pending disposition of this matter.

## II.  THE OFFENSE CONDUCT

The facts, as stated in the Presentence Investigation Report ("PSR"), are uncontested.

On September 26, 2022, at approximately, 1:52 p.m., Sequeira entered the Citizens Bank, located at 501 Rodman Street, Fall River, Massachusetts (inside the Stop and Shop grocery store) and robbed it. He entered the Stop & Shop grocery store and approached the Citizens Bank counter located at the front of the store. Sequeira approached the teller and demanded money; following it up with words to the effect of "listen, this is what's gonna happen, I have a gun and I'll put it against your forehead." The teller gave the Sequeira approximately $88.00 in (USC). As the teller was attempting to gather more cash for the Sequeira, he walked away and then began to flee the location on foot. Citizens Bank is insured by the FDIC.

On September 27, 2022, at approximately, 2:35 p.m., Sequeira entered the Santander Bank located at 209 Berkeley Street, Boston, Massachusetts and robbed it. Sequeira threatened to shoot the employees. According to the bank teller, the suspect entered the bank through the front door on Berkeley Street, ran up to the counter and stated words to the effect, "give me a 100-dollar bill or I'll put a bullet in your head," however no firearm was displayed. The teller stated they opened their cash drawer, which contained two stacks of bills, one totaling $80 (USC), and another totaling $500 (USC), and gave both to the Sequeira. According to the teller, Sequeira appeared displeased with the stack of bills that didn't contain $100 dollar denominations in it and fled the bank with only a stack of $100 bills totaling $500 (USC). Santander Bank is insured by the FDIC.

On September 28, 2022, at approximately, 4:01 p.m., Sequeira entered the M&T Bank located at 425 Boylston Street, Boston, Massachusetts and robbed it.  The teller stated that Sequeira approached their workstation and demanded money. The teller stated that Sequeira used words to the effect of "I'm going to put a gun to your head if you don't give me the $100 bills."  The teller

told responding officers that when they attempted to dispense currency through a "machine", that the suspect stated, "do you think I'm Joking"?  The teller at that point handed the suspect $253 (USC) in one-dollar bills, $135 (USC) in mutilated bills, and a stack of $20 bills, which included a tracking device. The victim stated that Sequeira complained that he had been given one-dollar bills. The teller stated that Sequeira then walked toward the exit, and sifted through the money, and discarded the stack of $20 bills that contained the tracking device by the front exit. Sequeira fled with approximately $468.00 from the Santander Bank, which is insured by the FDIC.

On September 30, 2022, at approximately, 3:15 p.m., Sequeira entered the TD Bank located at 1 Union Street, Boston, Massachusetts and robbed it.  Sequeira entered the bank and approached the teller.  Sequeira stated to the teller words to the effect of, "give me all the $100s in the drawer before I blow your brains out." The teller provided Sequeira with $854.00 (USC) and then Sequeira exited the bank and fled on foot. TD Bank is insured by the FDIC.

Collaborative efforts between the Fall River Police Department ("FRPD"), Boston Police Department ("BPD"), and the FBI's Violent Crime Task Force ("VCTF") ultimately led to the identification of Sequeira.  As a result, on October 5, 2022, law enforcement was informed that Sequeira was on a train enroute to Boston. Upon receiving this information members of the VCTF conducted surveillance in the vicinity of the Back Bay and Faneuil Hall areas of Boston in an attempt to locate Sequeira; believing that he was coming to Boston to commit another bank robbery.

During their surveillance, Sequeira was spotted in the vicinity of the Citizens Bank, located at 426 Boylston Street in Boston, Massachusetts. Sequeira was observed entering the bank and overheard by a BPD Detective already on scene (in the bank) and just a few feet away from Sequeira, as Sequeira demanded the teller give him hundreds or he would put a bullet in the teller's

head if they did not move fast enough. Sequeira was apprehended immediately by the BPD Detective and other members of the VCTF. Citizens Bank is insured by the FDIC.

### III.     GUIDELINE ANALYSIS

The guidelines as determined by U.S. Probation in the Pre-Sentence Report ("PSR") dated September 8, 2023, are uncontested by the parties.

**A. Offense Level Computation**

**¶ 21- Base Offense Level**

The Base Offense Level for bank robbery is 20.

**¶¶ 22 & 23 – Specific Offense characteristics**

The Base Offense Level is increased by 2-levels because the property taken was from a financial institution.

The Base Offense Level is increased by 2-levels because the threat of death was made during each robbery.

**¶ 27 – Adjusted Offense Level**

The Adjusted Offense Level is therefore 24.

**¶ 28 – Multiple Count Adjustment**

The Defendant is responsible for committing multiple bank robberies here. The Defendant committed four robberies and one attempted robbery, each is a unit of prosecution, pursuant to USSG §3D1.4(a), (b) and (c). The offense level is increased pursuant to the number of units assigned in USSG §3D1.4. The Defendant's Offense Level is thus adjusted 4-levels.

**¶ 35- Total Offense Level**

With prompt acceptance of responsibility, the Defendant's Total Offense Level is 25.

**B. The Defendant's Criminal History**

**¶¶54 & 55 - Criminal History Computation**

The Defendant has an extensive criminal history and although many of his past convictions have timed out, he still has been classified to have a criminal history score of six. Accordingly, the Defendant's criminal history category is established at III.

**C. Sentencing Options**

**¶ 94 - Guideline Provisions**

Based upon a Total Offense Level of 25 and a Criminal History Category of III, the Defendant's advisory guideline range is 70-87- months' imprisonment.

## IV. <u>SENTENCING RECOMMENDATION</u>

18 U.S.C. § 3553(a) requires a sentencing court to consider specific enumerated factors when determining an appropriate sentence. These factors include: 1) the nature and circumstances of the offense and the history and characteristics of the defendant and 2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.

The Court must impose a sentence which reflects the nature and circumstances of Sequeira's offense and his history and characteristics, and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2). *United States v. Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

Sequeira, age 60, has an extensive criminal history of arrest and convictions and spans over 40 years.  These convictions include:

- 1982 Disorderly Conduct – Guilty File (MA);
- 1982 Poss. of a Class D Controlled Substance – Guilty File (MA);
- 1982 Armed Robbery – Guilty 10 yrs. Incarceration (MA);
- 1985 Sale of Synthetic Cannabinoids – Guilty 45 days Incarceration (FL)
- 1989 Bank Robbery – Guilty 112 mos. Incarceration (MA Fed);
- 1997 Armed Bank Robbery – Guilty 60 mos. Incarceration (RI Fed);
- 1997 Use & Carry a Firearm During a Crime of Violence – Guilty 60 mos. Incarceration (RI Fed);
- 1997 Felon in Possession of a Firearm and Ammunition – Guilty 60 mos. Incarceration (RI Fed);
- 1997 Assault with a Deadly Weapon – Guilty 60 mos. Incarceration (RI Fed);
- 2021 Shoplifting – Nolo Plea 1 yr. Probation (RI);
- 2022 Shoplifting – Guilty File (MA);

Sequeira has been sentenced to prison on numerous occasions for lengthy periods of time, indeed he has spent most of his adult life behind bars. Sequeira has also had the benefit of state probation, US Probation, and numerous public and private services to address what seems to be a likely reoccurring issue with an undiagnosed mental health issue, which based on his prior cocaine and free base use, as documented in the PSR, was an attempt to self-medicate. PSR ¶¶78 & 86-87. Additional evidence of this is apparent in the fact that he is currently being prescribed an antipsychotic. PSR ¶85. During some of the periods outside of confinement Sequeira has shown progress. After his most recent release from Federal custody, he managed to steer clear of the criminal justice for almost three years. Nevertheless, despite these lengthy periods of imprisonment starting from the time he was a juvenile and running consistently until the present, any opportunities afforded to Sequeira to correct his behavior appear to all be in vain; as he time and again has reoffended.  The Government is placed in a position where it believes the only solution to solving Sequeira's seeming inability to keep from reoffending is incarceration. However, the Government will note that the pace and level of the Defendant's re-offense has

lessened. Indeed, it appears Sequeira often takes two steps forward and one step backwards; a behavior not inconsistent with slow and steady change.

The Government sincerely believes that Sequeira has tried to control this destructive behavior and despite time and time again failing, he has shown, especially most recently a capacity to change. Sequeira has attempted to transition to steady employment and a "regular life", which is evidenced by his work at the Nasiff Fruit Company. In this case as in his past, when Sequeira hits a proverbial bump in the road, he returns to a life he knows, a life of crime. As a result, the jointly proposed sentence in this case, still reflects a significant one for the Defendant. He faces incarceration again until his mid-sixties, and thereafter a period of supervision which will assist him in revising his problematic behavioral patterns and achieve success more akin to his recent conduct following his release in 2018. The Government feels that this period of imprisonment, while not insignificant, is necessary to keep him out of trouble, the public safe, and under appropriate supervision. Sequeira should finally get the help he needs while in custody to get on track and lead a productive life upon release.

A 54-month sentence of incarceration adequately accounts for the seriousness of the offense, promotes a respect for the law, protects the public, and serves as an adequate deterrent to both Mr. Sequeira personally and others more generally.

The Government is mindful of Sequeira's early years and issues he faced as a youth and into early adulthood has taken those into consideration when formulating this recommendation. Those issues need not be restated in this memorandum.

**V.     CONCLUSION**

The crime of bank robbery is a violent offense.  These were not random events. Sequeira, on the day of each robbery planned to rob these banks and use serious threats of violence to facilitate these crimes.

Sequeira's actions in continuing to rob these banks is unacceptable and this behavior cannot continue as it has throughout what remains of his life.  The employees of these banks and the members of the public should not have to be subjected to this type of behavior. The Government is well within its rights to demand a maximum sentence of 20 years' imprisonment for the bank robbery.  The Government however, for the reasons stated herein, requests this Court impose a sentence 54 months' imprisonment. Following completion of this sentence, the Government requests that Sequeira be placed on Supervised Release for the statutory maximum period of 3 years, be ordered to pay restitution to the bank and a be ordered to pay a mandatory special assessment fee of $100.

While incarcerated the Government implores Sequeira to take advantage of any and all counseling opportunities and reach out to other individuals to help them avoid the same pitfalls that landed him in this repeated situation. Sequeira has demonstrated during this most recent period of his life that he can be a productive member of society and that he can hold a decent well-paying job.  During his period of incarceration, he should strive to equip himself with technical and or other skills to assist him when released.

The Government recognizes that this is a significant sentence but nevertheless it is justified and appropriate as it is dictated by Sequeira's own senseless actions.  This type of sentence sends a clear message that this type of violent criminal behavior cannot and will not be accepted.

                                                            Respectfully submitted,

                                                            JOSHUA S. LEVY
                                                            Acting United States Attorney

                      By:     ***/s/ Luke A. Goldworm***
                                LUKE A. GOLDWORM
                                Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

    I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Luke A. Goldworm*
LUKE A. GOLDWORM
Assistant U.S. Attorney

September 6, 2023

# ADDENDUM 1 – IMAGES OF DEFENDANT'S CONDUCT

CITIZENS BANK

501 RODMAN STREET, FALL RIVER MA

SEPTEMBER 26, 2022



SANTANDER BANK

209 BERKELEY STREET, BOSTON MA

SEPTEMBER 27, 2022



M&T BANK

425 BOYLSTON STREET, BOSTON MA

SEPTEMBER 28, 2022



TD BANK

1 UNION STREET, BOSTON MA

SEPTEMBER 30, 2022



CITIZENS BANK

426 BOYLSTON STREET, BOSTON MA

OCTOBER 5, 2022





